## City of Lexington v. Finn.

(Decided June 18, 1912.)

### Appeal from Fayette Circuit Court.

1. Court—Discretion of in Refusing to Order Jury to View Premises.—The discretion of the court is not abused when he refuses to order the jury to view the premises though in the city where the court sits, the evidence not being conflicting as to their condition.

2. Verdict.—A verdict will not be disturbed as excessive simply because the amount is liberal, or more than this court would have favored.

3. Municipal Corporations—Drainage of Lot.—An open drain having been filled under an arrangement between the city and the owner; after the lot has been filled and improved the city has no right after many years to take out the pipes and make an open drain through the lot as it was originally especially after it has passed into the hands of a bona fide purchaser.

J. EMBRY ALLEN for appellant.

JAMES G. DENNY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Lula E. Finn owns a house and lot on Valley avenue
in the city of Lexington, the lot having a front of 30 feet
on the street and running back 85 feet. She acquired the
lot on August 27, 1904; in April, 1909, the city of Lex-
ington opened a ditch through the lot, six or eight feet
deep and eight or ten feet wide at the top, and left it
open; the ditch ran near the house so as to injure the
foundation on one side of the house; it cut off the privy
from it, and undermined a part of the foundation of the
coal house. She brought this suit against the city to
recover damages for the injuries to her property. The
city, in defense of the suit, showed substantially these
facts. The lot lies in a low piece of land; the natural
drainage for a large area of land out beyond the lot was
across this lot in a ditch, which had been there for a num-
ber of years. About twelve years ago, the city of Lex-
ington filled the street and laid two 18 inch pipes across
the lot, to carry off this water. After this was done,
some one, presumably the owner of the lot, filled the lot
so as to make it level above the pipes and planted trees
and vines in the ground. In this condition of the prop-
erty, he sold and conveyed it to Mrs. Finn, who took the
lot in this condition in 1904. She held the lot, as she took
it, until the year 1909, when the city, without notice to
her, entered upon the lot, took out the two pipes and
opened the drain, restoring it to its natural condition,
for the reason that, as it turned out, the pipes often be-
came choked and caused the water to dam up and over-
flow on other property. The city tore away Mrs. Finn's
fences at either end of the lot and left it open, leaving
the drain and lot in such a condition that Mrs. Finn was
thereafter unable to find tenants for it. On the hearing
of the case, the jury found a verdict in her favor of $300.
The court entered a judgment on the verdict, and the
city appeals.

At the conclusion of the evidence, the defendant
asked that the court allow the jury to be taken to the
premises and have a view of them. The motion was
overruled, and of this the city complains. It is insist-
ed, for the city, that the court erred in overruling this
motion, as the lot was in the city of Lexington, and it
would only have required a few minutes for the jury to

go and look at it; but we have held in a number of cases, that the discretion of the court in sending the jury to view the premises will not be interfered with by this court, unless palpably abused. We do not see that there was any such abuse of discretion here. There was little or no controversy in the evidence as to the condition of the lot, and a view of the premises by the jury could have had no decisive effect upon the result. It is also insisted that the amount of the verdict is excessive. The property had cost Mrs. Finn about $425, and it is said that a judgment for $300 is palpably excessive. But a ditch, such as we have described, standing open, would practically destroy the value of the property for a residence, and Mrs. Finn was entitled to compensation for the injuries she sustained, to be measured by the difference in value of her property as it was without the ditch and with the ditch standing open. While the verdict is liberal, we cannot say that it is so excessive, under the evidence, as to warrant us in disturbing it on this ground. She was receiving a good rent for the property before the ditch was dug and had a property that would readily rent to the class of tenants she had.

Lastly, it is insisted that the city had the right to restore the ditch to its original condition, and that the court should have so told the jury in its instructions; but we think the court properly refused so to instruct the jury. If the ditch had remained in its original condition and had become temporarily stopped, the city would, of course, have had the right to clean it out and restore it to its natural condition; but that is not this case. Here, by some arrangement between the city and the property owner, the city has placed pipes in the ditch. The lot had been filled, the pipes covered up and the lot had been improved in this condition of things; while in this condition, it had been bought by Mrs. Finn. The city was not compelled to lay pipes in this ditch, but, when under the arrangement between the city and the property owner, whether made expressly or tacitly, the open drain was filled up and converted into a covered drain, the city was without right, especially after the property had passed into the hands of a bona fide purchaser, to take out the pipes and open the drain and leave it open. Mrs. Finn bought the property as it stood and was entitled to hold it in that condition. If the city changed the condition of things without her consent, it

should compensate her for the loss.  The property own-
er had gone to .the expense of adjusting the property
to the new conditions, and after this had been done, the
city was without authority, without his consent, to re-
establish the old open drain through the lot.
Judgment affirmed.